## CONSTITUTIONAL LAW

### TREATIES — STATE MAY ENTER AGREEMENT WITH WORLD HEALTH ORGANIZATION TO PROVIDE CERTAIN ADVISORY SERVICES

November 3, 1995

*The Honorable Martha S. Klima*
*House of Delegates*

You have requested our opinion whether a memorandum of understanding (the "Memorandum") between the World Health Organization ("WHO") and the Maryland Department of Health and Mental Hygiene ("DHMH") violates the federal Constitution. Our opinion is that the Memorandum does not violate the Constitution.

## I

### Background

The World Health Organization was established in 1948 as one of the specialized agencies of the United Nations. Pursuant to a joint resolution of Congress, President Truman accepted membership on behalf of the United States. *See* Public Law 80-643, 62 Stat. 441 (22 U.S.C. §290) and 62 Stat. 2679.

The Memorandum, which has a term of three years, was executed on behalf of the State by Governor Glendening and on behalf of DHMH by the Secretary of that Department, Dr. Martin P. Wasserman. It was executed on behalf of WHO by Dr. Michel Jancloes, Director of the Division of Intensified Cooperation with Countries ("ICC").

In relevant part, the Memorandum provides that the ICC is to select appropriate public health projects in foreign countries and invite DHMH to participate. Memorandum ¶¶I. 1 and 2. Projects could include reorganization and decentralization of health care systems, disease control and immunization strategies, and hospital

management.  ¶I. 1.  If DHMH agrees to participate in a project, it is to recommend State employees who wish to serve voluntarily as technical advisers on the project for a short period of time.  ¶¶I. 2 and II. 1.  Although such recommendations are subject to ICC approval and the DHMH advisers would work under the direction of WHO officials, the advisers would retain their status as State employees.  ¶¶II. 1a and 2.

There is no question of WHO's authority to enter the Memorandum.  Among the functions defined by the organization's constitution is acting as the directing and coordinating authority on international health work, collaborating with governmental health agencies, furnishing appropriate technical assistance, and providing counsel and assistance in the field of health.  WHO Constitution, Chapter II, Article 2(a), (b), (d) and (g), 62 Stat. 2681-82.  WHO also has express power to take all necessary action to attain its objectives.  *Id*.  Thus, WHO undoubtedly has broad authority to enter cooperative arrangements on health projects with public authorities.

The issue here is whether, in adhering to such an arrangement, the State and its health department acted in a way that is contrary to the federal Constitution.[1]

# II

## Analysis

As an inherent attribute of its sovereignty, the State of Maryland has the authority to enter agreements with other parties, including sovereign powers, subject to the paramount power of the National Government under the federal Constitution.  *See Poole v.*

---

[1] We assume, without deciding, that the Governor and Secretary acted within existing grants of authority under the Maryland Constitution and statutes.  *See* Article II, §1 of the Constitution; §2-102(b) of the Health-General Article, Maryland Code; §3-302 of the State Government Article, Maryland Code.

*Fleeger*, 11 Pet. (36 U.S.) 185, 209 (1837). In the field of foreign affairs, the authority to represent the Nation is exclusively reserved to the federal government. *United States v. Belmont*, 301 U.S. 324, 330 (1937). As you noted in your letter, the federal Constitution expressly forbids the states to enter "any Treaty, Alliance, or Confederation." Article I, §10, cl. 1. Moreover, no state may enter "any Agreement or Compact with another State, or with a foreign Power," except with the consent of Congress. Article I, §10, cl. 3.

Given the flat constitutional prohibition on states' entering *treaties*, but only a qualified prohibition on their entering *agreements* and *compacts*, the Supreme Court has recognized that treaties differ from compacts and agreements. Although these words were evidently used by the framers as terms of art, their 18th Century meaning has been lost to time. *See United States Steel Corp. v. Multistate Tax Commission*, 434 U.S. 452, 460-462 (1978).

For purposes of international law, a treaty broadly refers to any international agreement concluded by sovereign powers. However, under the federal Constitution, the term has a more limited meaning. It generally refers only to those international agreements that require the approval of the Senate under Article II, §2, cl. 2. *Weinberger v. Rossi*, 456 U.S. 25, 29-30 (1982). Even for purposes of the Supremacy Clause, Article VI, §2, it has been understood that the word "treaty" is used in this narrow sense. *Belmont*, 301 U.S. at 331. Because the Supremacy Clause and the prohibition on the states' entering treaties complement one another, for purposes of the prohibition the term "treaty" in the latter provision likewise should be construed to refer only to those agreements requiring Senate approval.

Although there is no well-defined legal test for determining what agreements must be submitted to the Senate, the practice is based on such factors as the extent to which the President is relying on his own powers (for example, as commander in chief), the degree

to which the Nation's interests are affected, and the length of the agreement.  *See* Department of State, 11 *Foreign Affairs Manual* Chapter 700, §721.2 and .3.[2]  Applying these standards, we conclude that the Memorandum is not a "treaty" that the State is forbidden to enter.  Rather, it is as a short-term arrangement to provide technical advisers that cannot accurately be said to affect the political power of the President or the Congress.

Unlike the case of treaties, the federal Constitution does not absolutely prohibit states from entering agreements and compacts with foreign powers.  Such agreements and compacts must simply be approved by Congress.  Moreover, in cases concerning agreements among the states, it has been held that not all agreements and compacts among the states are subject to congressional approval.  Congressional approval is required only for those agreements directed at the forming a combination that tends to increase the political power of the states and that tends to encroach upon or interfere with the just supremacy of the United States. *Northeast Bancorp, Inc. v. Board of Governors,* 472 U.S. 159, 175 (1985).

To the extent that similar considerations apply to international agreements, an arrangement to provide advisory services to an international organization cannot be said to increase the political power of the State of Maryland or interfere with the just supremacy of the United States.  Indeed, because the United States is a member of WHO and is represented in its policy-setting Assembly, *see* WHO Constitution, Chapter V, Articles 10 and 18(a), 62 Stat. 2683-2684, the United States is in a position to object to agreements between WHO and the states of the United States.  We are not aware that the United States Government has objected to the Memorandum as interfering with its role in representing the Nation in foreign affairs or as being in conflict with the Constitution or any Treaty or Law of the United States in violation of the Supremacy Clause.  For these reasons, we conclude that the Memorandum is not an "Agreement" or "Compact" requiring the consent of Congress.

---

[2] Chapter 700 of this publication appears as Appendix 4 to a study prepared for the Senate Foreign Relations Committee.  Congressional Research Service, *Treaties and Other International Agreements: The Role of the United States Senate*, Senate Comm. On Foreign Relations, 103d Cong., 1st Sess. (Comm. Print 1993).

# III

## Conclusion

In summary, it is our opinion that the memorandum of understanding between the State of Maryland and the World Health Organization to provide technical advisers for health projects in foreign countries does not violate the federal Constitution.

J. Joseph Curran, Jr.
*Attorney General*

Richard E. Israel
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*